# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| THOMAS COLLIER, | ) |
| | ) |
| Petitioner, | ) CASE NO. 3:10-cv-0912 |
| | ) Chief Judge Haynes |
| v. | ) |
| | ) |
| BRUCE WESTBROOK, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM

Petitioner, Thomas Collier, a state prisoner, filed this pro se action under 28 U.S.C. § 2254 seeking the writ of habeas corpus to set aside his conviction of second degree murder for which Petitioner received a sentence of thirty-five (35) years. Petitioner's claims are that at the time of his arrest he was taking psychotropic medications and has documented history of mental health issues, but the state trial court denied Petitioner's counsel's request for psychiatric assistance to prepare an adequate defense. (Docket Entry No. 1, Petition at 2). Petitioner entered a guilty plea, but alleges that his attorney reviewed the terms of the plea agreement with Petitioner's mother and failed to review the plea agreement with him. Petitioner's claims are for an invalid guilty plea and ineffective assistance of counsel.

### A. Review of the State Record

In March 2006, Petitioner was charged with first degree murder and on May 4, 2007 entered a guilty plea and pursuant to his plea agreement was sentenced to 35 years. Collier v. State, No. M2008-00917-CCA-R3-PC, 2008 WL 6190338 (Tenn. Ct. Crim. App. January 13, 2009) Five months after his sentencing on his guilty plea, Petitioner filed a state post-conviction asserting claims

1

of an involuntary guilty plea and ineffective assistance of counsel at sentencing. The state trial court denied the petition and on appeal, the Tennessee Court of Criminal Appeals affirmed. The Tennessee State Supreme Court denied Petitioner's application for permission to appeal.

In his post-conviction appeal, the Tennessee Court of Criminal Appeals made the following findings:

> The State entered the following statement of fact at the plea colloquy:
>
> [I]f this case, which is 2006-A-792, had gone to trial, the State's proof would come primarily from three brothers; Marcus Beasley, Darryl Beasley, and Gregory Beasley, who have known the defendant for quite a period of time and are related to him in some manner as well as the defendant's statement to the police.
>
> The testimony from these brothers would be that on January the 5th of 2006 [Petitioner] had a gun, was acting in an aggressive manner in his statements and indicating that he was going to rob somebody or going to shoot somebody that night. At about 1:45 a.m. in an alley off 27th Avenue North near Clifton the three brothers-or two of the brothers at least were out along with the defendant. And they came into contact with the victim, Ms. Lashelle ... Stevenson, who they knew. [Petitioner] got into a verbal argument with Ms. Stevenson, as far as we can tell, over nothing more than areas of town which they came from or represented or something to that effect. In any event [Petitioner] with no more provocation than that pulled out his gun and shot Ms. Stevenson. She fell to the ground, and he walked over and shot her twice more in the head as she lay there on the ground.
>
> The brothers went home and told their mom what had happened, and she got them to come down and tell the police what happened. While they were doing that [Petitioner] got in touch with the police and came down. And in his statement he really could not say exactly why he had done this, and he couldn't exactly say how many times he had shot her. But he did admit he did shoot her. This was here in Davidson County.
>
> In March of 2006, the Davidson County Grand Jury indicted Petitioner for one count of first degree murder. On May 4, 2007, Petitioner entered a guilty plea to one count of second degree murder as a Range II multiple offender with a sentence of thirty-five years. Petitioner pleaded to a higher range pursuant to his plea agreement.
>
> On October 26, 2007, Petitioner filed a petition for post-conviction relief. The post-conviction court held a hearing on the petition on March 19, 2008. Petitioner

refused to testify at the hearing. The sole witness was trial counsel.

Trial counsel testified that he represented Petitioner at his guilty plea to second degree murder. Trial counsel was appointed counsel. He met with Petitioner between five and ten times in preparation for trial. When preparing for trial, trial counsel believed that the question was whether Petitioner would be convicted of first degree murder or second degree murder. He believed this to be the case because the facts were that the murder was the result of a fight in the street. It started as an argument and ended in a killing. Trial counsel recalled that he discussed the entry of the guilty plea with Petitioner either the night before or the day of the plea. **Trial counsel did not specifically recall going over the plea petition with Petitioner, but he testified that it is his standard operating procedure to go over it. When shown the plea petition at the hearing, trial counsel testified that his handwritten notes were on the document. Trial counsel could not recall a specific conversation with Petitioner that he was pleading out of his range, but trial counsel did remember a conversation with Petitioner's mother about Petitioner pleading out of range.** Trial counsel also testified that he hired an investigator to interview witnesses. The case was set for trial, but trial counsel did not subpoena any witnesses. Trial counsel stated that he became aware about two weeks out that Petitioner was going to plead guilty, so he did not issue subpoenas for that reason. According to trial counsel, there were no grounds present to support a motion to suppress Petitioner's confession. **Trial counsel was concerned about Petitioner's mental health and hired a psychiatrist from Vanderbilt University to examine Petitioner. The psychiatrist concluded that Petitioner was exaggerating or feigning his symptoms so that there was no conclusion about Petitioner's mental health.**

On cross-examination, trial counsel testified that he had roughly six years of criminal defense experience and that he had tried some murder cases. He also stated that the main witnesses were Petitioner's cousins and there was basically no factual dispute as to the occurrence.

\* \* \*

As stated above, **Petitioner refused to testify at the post-conviction hearing.** Therefore, the evidence presented consists of the transcript of the plea colloquy entered as an exhibit and trial counsel's testimony. **The transcript of the plea colloquy shows that the trial court advised Petitioner that he was waiving his right to a Range I sentence and that he was pleading above his range to a Range II sentence. When asked if he was waiving any issues with regard to pleading above his range, Petitioner replied in the affirmative. At the plea colloquy, Petitioner also agreed that trial counsel had explained to him the effects on his sentence of pleading outside of his range. Petitioner also stated that he and trial counsel had thoroughly discussed his plea agreement, and they had reviewed the**

**plea petition together. Trial counsel could not independently recall discussing with Petitioner the fact that he was pleading outside of his range. However, he did state that it was his standard operating procedure to go over all plea agreements with the defendants he represented. In addition, he did recall having a discussion with Petitioner's mother that Petitioner would be pleading out of range.**

**Petitioner has presented no affirmative evidence that he was not advised of the fact that he was pleading outside of his range. In fact, the facts presented at the post-conviction hearing point to the conclusion that he was indeed apprised of this fact. For this reason, we agree with the trial court's conclusion that Petitioner has not met his burden and find no evidence that preponderates against this conclusion by the post-conviction court.**

For this reason, we conclude that Petitioner's plea was entered voluntarily, intelligently, and knowingly. We also conclude that trial counsel did not afford deficient representation, and even if the representation was deficient, Petitioner has not proven that he would not have pled guilty if not for trial counsel's representation.

Collier v. State, 2008 WL 6190338, at **1-2, 4-5 (emphasis added).

### B. Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings, as opposed to dicta" of its decisions "as of the time of the relevant state-court decision." Id. at 412.

In Greene v. Fisher, 132 S. Ct. 38, 44 (2011), the Supreme Court considered whether "'clearly established Federal law' includes decisions of this Court that are announced after the last adjudications of the merits in state court but before the defendant's conviction becomes final" and answered the question in the affirmative. There, a Supreme Court decision at issue was rendered two months after the state supreme court upheld the petitioner's convictions. The Supreme Court held that its decision was not clearly established at the time of the state supreme court's decision. Id. . The Supreme Court noted a different result if the Petitioner had applied for the writ of certiorari or had filed a state post-conviction petition. Id. at 45.

In Bell v. Cone, 535 U.S. 685, 693 (2002), the Supreme Court reiterated that the AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law." Under the "unreasonable application" clause, a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. The Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," and a federal habeas court may not grant habeas relief "simply because that court concludes in its independent judgment that the

relevant decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

In deciding habeas claims, the Supreme Court reiterated that such claims are to be decided on the record before the state court:

> In this and related contexts we have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Yarborough v. Gentry, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) 124 S.Ct., at 4 (denying relief where state court's application of federal law was "supported by the record"); Miller-El v. Cockrell, 537 U.S. 322, 348, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Holland v. Jackson, 542 U.S. 649, 652 (2004) (emphasis added). The district court also "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 738 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. Skaggs v. Parker, 235 F.3d 261, 266 (6th Cir. 2001).

Where a habeas petitioner pled guilty, the Supreme Court defined the standard for ineffective assistance of counsel claims in that context:

> The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity. A state prisoner must, of course, prove that some constitutional infirmity occurred in the proceedings. But the inquiry does not end at that point, as the Court of Appeals apparently thought. If a prisoner pleads guilty on the advice of counsel, he must

6

demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, supra, 397 U.S. at 771. Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof. Thus, while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief.

We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, McMann, supra, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered possible constitutional infirmity in the proceedings.

The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, see Brady v. United States, supra, 397 U.S. at 751-752, or by contesting all guilty, see Santobello v. New York, 404 U.S. 257 (1971). A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement... might be factually supported.

Tollett v. Henderson, 411 U.S. 258, 266-68 (1973) (emphasis added).

"'The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case." Boria v. Keane, 99 F.3d 492, 496-97 (2d Cir. 1996) (citation omitted). "A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." Id. (quoting ABA's Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992)) (emphasis in the original). In this Circuit, a defendant "is entitled to the benefit of his attorney's superior experience and training in criminal law," to provide the defendant with a meaningful basis for deciding whether to accept a plea offer. Smith v. United States, 348 F.3d 545, 553 (6th Cir. 2003). In Smith, the Sixth Circuit elaborated on counsel's obligations in the context of a guilty plea.

> The decision to plead guilty--first, last, and always--rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.
>
> On the other hand, the attorney has a clear obligation to fully inform her client of the available options. We have held that the failure to convey a plea offer constitutes ineffective assistance, see Griffin, 330 F.3d at 734, but in the context of the modern criminal justice system, which is driven largely by the Sentencing Guidelines, more is required. <u>A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.</u> In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time. . . . <u>The criminal defendant has a right to this information, just as he is entitled to the benefit of his attorney's superior experience and training in the criminal law.</u>

348 F.3d at 552-53 (emphasis added).

As applied here, the State courts found that Petitioner did not have any mental health issues

and his counsel secured an evaluation by a psychiatrist who opined that petitioner was feigning his alleged mental illness. The state courts found that Petitioner was advised of his actual sentence that was outside the range. Petitioner pled guilty to second degree murder under facts that were charged as first degree murder. Significantly, Petitioner did not testify to support any of his claims in the state courts and this Court is to evaluate his claims based upon the state court record. For these reasons, the Court concludes that petitioner's claims lack merit and this action should be dismissed with prejudice.

    An appropriate Order is filed herewith.

    Entered this the 30 day of May, 2013.

                                     William J. Haynes, Jr.
                                     Chief Judge
                                     Middle District of Tennessee